UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLEKSANDR SAVOSTIANOV,<br><br>               Plaintiff,<br><br>     v.<br><br>FEDERAL ADVOCATES, INC., *et al.*<br><br>               Defendants. | Civil Action No. 20-1711 (CKK) |

**MEMORANDUM OPINION**
(March 17, 2021)

Plaintiff Oleksandr Savostianov brings this action against his former employer, Defendant Federal Advocates, Inc. and its president, Michael Esposito, alleging breaches of his employment contract, unjust enrichment, and violation of the District of Columbia Wage Payment and Collection Law ("DCWPCL"). *See* Compl., ECF. No. 1. Defendants filed the present [7] Motion to Compel Arbitration, arguing that Plaintiff, by receiving an Employee Handbook containing a mandatory arbitration provision, agreed to arbitrate these claims. Defendants request that this Court compel arbitration and dismiss this case or, alternatively stay the litigation while the arbitration is pending.

Upon review of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court finds that Defendants have not demonstrated that a binding and enforceable arbitration agreement exists, and therefore DENIES Defendants' Motion to Compel Arbitration.

---

[1] The Court's consideration has focused on the following:
- Defendants' Motion to Compel Arbitration and Dismiss Complaint, or, in the Alternative, Stay Proceedings Pending Arbitration ("Defs.' Mot."), ECF No. 7;
- Plaintiff Savostianov's Memorandum in Opposition to Defendants' Motion to Compel Arbitration ("Pl.'s Opp'n"), ECF No. 10; and
- Defendants' Reply in Support of Motion to Compel Arbitration ("Defs.' Reply"), ECF No. 11.

I.     **BACKGROUND**

Plaintiff was hired by Federal Advocates, Inc. as a Director of Government and International Affairs in May 2017. Compl. ¶ 11. The terms of his employment were set forth in an Employment Agreement. *Id.* ¶ 13. Plaintiff alleges that Defendants breached the Employment Agreement and violated the DCWPCL by failing to pay wages during his employment and failing to pay him the value of his accrued leave benefits and severance upon his termination in January 2020. *Id.* ¶¶ 1, 76–103.

Pertinent to the current motion, Federal Advocates distributed to its employees an Employee Handbook during their "onboarding process." Defs.' Mot. Ex. 1, Declaration of Michael J. Esposito ("Esposito Decl.") ¶ 7.[2] Plaintiff, for purposes of this Motion, does not contest that he "received a copy of the Employee Handbook." Pl.'s Opp'n at 2 n.1. Defendants represent that Plaintiff "received, reviewed, and executed" the Employee Handbook. Defs.' Mot. at 2; Esposito Decl. ¶¶ 8–9. Defendants have not submitted the version purportedly executed by Plaintiff, but rather attached to their Motion a "true and correct copy of the Employee Handbook that was distributed to Federal Advocates' employees as of May 2017." Esposito Decl. ¶ 8. Defendant Esposito indicates that "based on my recollection, [Plaintiff] reviewed and signed acknowledging receipt of the Employee Handbook and agreeing to abide by its policies and terms." *Id.* ¶ 9.

Among other company policies, the Employee Handbook contains a mandatory arbitration provision (the "Arbitration Clause"):

> **1.5 Dispute Arbitration**
> In return for Company's promise to do the same, your continued employment, and other benefits conferred through the employment relationship, you the employee (hereinafter "you," "your") promise

---

[2] The executed version of Mr. Esposito's declaration is available at ECF No. 9.

> to submit to binding arbitration all claims, disputes, or controversies with the Company and its officers, directors, and employees arising out of or relating to your employment relationship with Company, including disputes related to your wages and benefits, your termination, intellectual property rights, confidentiality, and any breach of this agreement, to be decided by an independent, mutually agreed upon arbitrator and any Company arbitration policy or agreement.

Esposito Decl. Ex. A, Federal Advocates Employee Handbook Updated April 12, 2017 ("Employee Handbook") § 1.5. The Employee Handbook contains disclaimers that it is "not an employment contract" and that "[n]othing in this Employee Handbook creates a binding employment contract between [Federal Advocates] and its employees[.]" *Id.* Foreword; § 1.3. It also allows Federal Advocates "[a]s circumstances warrant . . . in its sole discretion" to "deviate from the terms stated herein as it sees fit." *Id.* § 1.2. And it further provides that "all terms, conditions, policies, and procedures as stated in this document are subject to change, and nothing stated herein is guaranteed to remain a fixed term or condition of your employment," and that the "Company has the express right to amend, modify, revoke, and add to the terms of this Employee Handbook." *Id.* Foreword; § 1.2.

The final page of the Employee Handbook contains a form called "Employee Acknowledgements" with a space for the employee's signature. *Id.* at 46. By signing this form, the employee agrees that he has "received a copy of this Employee Handbook," and that he understands and will "comply with ALL policies contained in it[.]" *Id.* The Employee Acknowledgements form does not refer to arbitration or alternative dispute resolution. The form again states: "this is not a contract of employment or a guarantee of a continued employment relationship for any period of time." *Id.* It also states that Federal Advocates "reserves the right to change, remove, or add to the policies herein at any time by providing official notice to [the

3

employee] or posted in a conspicuous place in [the employee's] work setting designated for such purposes[.]" *Id.*

Plaintiff filed his Complaint in this action on June 23, 2020. Compl., ECF No. 1. Defendant then moved to compel arbitration, arguing that Plaintiff's claims are subject to a "valid and binding mandatory arbitration provision" set forth in Section 1.5 of the Employee Handbook. Defs.' Mot. at 2–3. Defendants request that this Court compel arbitration and dismiss this case or, alternatively stay the litigation pending the arbitration. Plaintiff opposes Defendants' motion, arguing that Defendants have failed to demonstrate the existence of an enforceable arbitration agreement between the parties. Pl.'s Opp'n at 2.

## II.   DISCUSSION

The Federal Arbitration Act ("FAA") creates a strong presumption in favor of arbitration and directs that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Accordingly, when a court is presented with a dispute covered by an arbitration agreement, it must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. However, arbitration agreements "remain creatures of contract, and, as such, parties cannot be required to arbitrate unless they have expressly consented to do so." *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 179 (D.D.C. 2015). Before ordering the parties to arbitrate, the Court must determine whether "(1) the parties entered into a binding and enforceable arbitration agreement and, (2) if so, whether the arbitration agreement encompasses the claims raised by Plaintiff in [his] Complaint." *Sapiro v. VeriSign*, 310 F. Supp. 2d 208, 212 (D.D.C. 2004). Plaintiff does not dispute that the Arbitration Clause, if valid, covers his claims. *See* Pl.'s Opp'n at 2 n.1. Therefore, the sole issue before the Court is whether the Arbitration Clause itself is enforceable.

To determine whether the Arbitration Clause in the Employee Handbook creates a valid and enforceable arbitration agreement, the Court looks to state contract law. *See Bailey v. Fed. Nat'l Mortg. Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000). Under District of Columbia law, a binding contract is formed when the parties reach agreement on all material terms and indicate an intention to be bound. *See Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995). "[T]he party asserting the existence of a contract to submit disputes to arbitration has the burden of proving its existence." *Sapiro*, 310 F. Supp. 2d at 212 (quoting *Bailey*, 209 F.3d at 746).

Here, the parties dispute whether the Arbitration Clause was supported by consideration—specifically whether the language of the Employee Handbook created a mutual agreement or permitted optional performance by Defendants. Defendants contend that the text of the Arbitration Clause contains mutual promises to arbitrate, which is sufficient consideration to support a valid arbitration agreement. Defs.' Mot. at 6 (citing *Sapiro*, 310 F. Supp. 2d at 213–14; *Shatteen*, 113 F. Supp. 3d at 181). Plaintiff argues that he is not required to arbitrate his claims because Defendants' promise to arbitrate is illusory, and therefore the purported agreement to arbitrate is invalid for lack of consideration. Plaintiff notes that the Employee Handbook contains multiple provisions allowing Defendants to "unilaterally change or revoke the Arbitration Clause[.]" Pl.'s Opp'n at 3. Plaintiff cites, for example, the provisions of the Employee Handbook allowing Federal Advocates to "amend, modify, revoke, and add to the terms of this Employee Handbook," Employee Handbook § 1.2, and indicating that the policies stated therein are "subject to change," *Id.* (Foreword). The Employee Handbook also allows Federal Advocates "in its sole discretion" to "deviate from the terms stated herein as it sees fit," *id.* § 1.2, and the Employee Acknowledgment Form states that the company "reserves the right to changes its

implementation, interpretation, or application of the policies and procedures herein at any time," *id.* at 46. Plaintiff argues that Defendants' ability to unilaterally change or deviate from the terms of the Employee Handbook renders their performance of the Arbitration Clause "optional" and their promise "illusory." Pl.'s Opp'n at 3.

Upon its review of the Employee Handbook and the legal authority cited by both parties, the Court agrees with Plaintiff that the Arbitration Clause lacks consideration. Although the text of the Arbitration Clause itself contains mutual promises to submit claims to arbitration, other provisions of the Employee Handbook allow Defendants to alter or "deviate" unilaterally from its terms. These provisions make Defendants' promise to arbitrate "optional" and therefore illusory, undermining a finding of consideration. *See Davis v. Joseph J. Magnolia*, 640 F. Supp. 2d 38, 45 (D.D.C. 2009) ("A contract lacks consideration when one party's promise is illusory, and a promise is illusory when performance of that promise is optional." (quoting Restatement (Second) § 77 (1981))).

Defendants, however, contend that their ability to modify the Arbitration Clause is restricted by the requirement that they provide "notice" to the employees "through official Company written policy notices." Defs.' Mot. at 6; *see* Employee Handbook § 1.2 (The terms of this Employee Handbook may only be altered through official Company written policy notices."). Defendants argue that this notice requirement provides an "adequate safeguard" to ensure that its promise to arbitrate is enforceable and not illusory. Defs.' Mot. at 7. In support of this argument, Defendants rely on *Shatteen v. Omni Hotels Mgmt. Corp.*, in which the court found that even though the agreement allowed the defendant-employer to "unilaterally modify" the terms of its arbitration program, its discretion to do so was "by no means unbounded." 113 F. Supp. 3d at 181. Specifically, the court in *Shatteen* pointed to provisions of the agreement

6

requiring the employer to give 14-days advance notice of any changes to its arbitration policies and prohibiting retroactive application of any changes to "claim[s] that [have] already been submitted" for arbitration. *Id.* The court reasoned that these terms allowed the plaintiff a choice upon receiving notice of the changed policy: she could either file her claim under the old arbitration program, or she could delay and file under the new program. *Id.* The court concluded that these provisions allowed the parties "parity of choice," but did not create "optional" performance. *Id.*

      Here, Defendants contend that the requirement that they provide notice "through official Company written policy notices" and the *lack* of any provision *allowing* retroactive application of changed policies make this case analogous to *Shatteen*. Defs.' Mot. at 6-7. The Court disagrees. First, the Employee Handbook *only* requires Defendants to given notice to "alter" its terms. Employee Handbook § 1.2 It does not mandate that Federal Advocates provide notice when it will "deviate" from its terms; rather, it allows Defendants to "deviate" from the terms of the Employee Handbook "in its sole discretion . . . as [Federal Advocates] sees fit." *Id.* Defendants could presumably "deviate" from its promise to submit claims to arbitration without notice. Second, nothing on the record indicates that the "official Company written policy notices" would allow Plaintiff the "parity of choice" explained in *Shatteen*. Rather, the Employee Handbook suggests that a modification could come about "upon posting of the written notice." Employee Handbook at 46 ("That Company reserves the right to change, remove, or add to the policies herein at any time by providing official notices to me or posted in a conspicuous place in my work setting designated for such purposes."). Plaintiff argues that Defendants could enact a modification to the Arbitration Clause "immediately" without providing employees the opportunity to "plan accordingly," making this notice provision unlike the 14-day requirement

7

discussed in *Shatteen*. Pl.'s Opp'n at 5–6; Employee Handbook at 46. And third, the court in *Shatteen* relied on an express provision barring retroactive application of policy changes. Here, Defendants suggest that the *lack* of a provision *allowing* retroactive application has the same effect. The Court does not find this reasoning persuasive, especially considering other provisions allowing the company to change its "interpretation" of the Employee Handbook "at any time." Employee Handbook at 46.

The Court finds that the ability of Defendants to "deviate from" or otherwise alter the terms of the Employee Handbook without a specified time period for notice permits "optional performance" of the terms of the Employee Handbook by Defendants, making their promise in the Arbitration Clause illusory. The Arbitration Clause, therefore, is not supported by consideration and does not give rise to an enforceable arbitration agreement between the parties.[3]

### III. CONCLUSION

For the foregoing reasons, the Court finds that Defendants have failed to carry their burden to demonstrate that an enforceable, binding arbitration agreement exists. Accordingly, the Court DENIES Defendants' Motion to Compel Arbitration. An appropriate Order accompanies this Memorandum Opinion.

    /s/
COLLEEN KOLLAR KOTELLY
United States District Judge

---

[3] Because the Court concludes that the purported arbitration agreement fails for lack of consideration, it does not reach Plaintiff's additional argument that the Arbitration Clause "constitutes, at most, an unenforceable 'agreement to agree.'" Pl.'s Opp'n at 9.